**IN THE UNITED STATES DISTRICT COURT**
                          **FOR THE DISTRICT OF KANSAS**


**JUAN CARLOS GARCIA ROMAN,**

                **Plaintiff,**

       **v.**                                 **CASE NO.  12-3065-SAC**

**FNU LNU Unknown State
and Local Officials, Barton
County, Kansas, Law Enforcement
Officials, et al.,**

                **Defendants.**

                          **MEMORANDUM AND ORDER**

     This civil complaint was filed pursuant to 42 U.S.C. § 1983 by Juan Carlos Garcia Roman, an inmate of the Dalby Correctional Facility, Post, Texas.[1]  Mr. Garcia alleges that $1200 in cash was taken from him during his arrest in Barton County, Kansas, and never returned.  He asserts that the seizure was unlawful and violated his federal constitutional rights.  Plaintiff is required to satisfy the filing fee and to show cause why this action should not be dismissed for failure to state a federal constitutional violation.


**FILING FEE**

     The statutory fee for filing a civil action in federal court is $350.00.  Mr. Garcia has not paid this fee.  Nor has he submitted a motion for leave to proceed without prepayment of fees.  This action may not proceed unless and until plaintiff satisfies the statutory

---

[1] Plaintiff has recently filed four civil complaints in this court.  In three he refers to himself as Garcia Roman, but in the fourth he calls himself Garcia.  In his 2007 criminal case he is referred to as Garcia, while in his 2010 case he is referred to as Garcia Roman.  The clerk is directed, if appropriate, to list all these cases under both names to ensure accuracy of records relating to this person.  The court refers to plaintiff as Mr. Garcia in his four currently pending cases.

filing fee in one of these two ways.

28 U.S.C. § 1915 requires that a prisoner seeking to bring an action without prepayment of fees submit a motion together with an affidavit described in subsection (a)(1), and a "certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the six-month period immediately preceding the filing" of the action "obtained from the appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2).  The clerk shall be directed to provide forms for filing a proper motion under § 1915, and plaintiff is required to utilize these forms if he submits a motion.  If plaintiff does not satisfy the filing fee by either paying the full amount or submitting a properly supported motion within the time prescribed by the court, this action may be dismissed without prejudice and without further notice.

Mr. Garcia is forewarned that under 28 U.S.C. § 1915(b)(1), being granted leave to proceed without prepayment of fees does not relieve a plaintiff of the obligation to pay the full $350 fee. Instead, it merely entitles him to pay the fee over time through payments automatically deducted from his inmate trust fund account as authorized by § 1915(b)(2).[2]

**FACTUAL BACKGROUND AND CLAIMS**

The court takes judicial notice of the case files in United

---

[2] If plaintiff files a motion to proceed without prepayment of fees and it is granted, then the Finance Office of the facility where plaintiff is currently confined will be authorized pursuant to §1915(b)(2) to collect twenty percent (20%) of the prior month's income each time the amount in plaintiff's account exceeds ten dollars ($10.00) until the filing fee has been paid in full.

States v. Juan Carlos Garcia Roman, No. 10-10065-01-MLB (hereinafter 2010 case) and United States v. Juan Carlos Garcia, No. 07-40069-01-MLB (hereinafter 2007 case).  Orders entered in these criminal cases together with plaintiff's allegations and exhibit and the opinion of the Tenth Circuit in U.S. v. Garcia-Roman, 2012 WL 1130646, *1 (10th Cir. Apr. 5, 2012) indicate the following factual background.

In his 2007 criminal case, Mr. Garcia was convicted in 2008 of distribution of twenty kilograms of marijuana, sentenced to time served, and placed on two years of supervised release.  He was then deported to Mexico.

Mr. Garcia thereafter unlawfully re-entered this country.  In March 2010 he was arrested by local law enforcement officers in Barton County, Kansas, for driving without a valid license.  On March 27, 2010, the Office of Immigration and Customs Enforcement (ICE) was notified by Barton County officials that a foreign national was in its custody.  Mr. Garcia was found to be a Mexican national that had previously been removed.  ICE lodged a detainer seeking custody of Mr. Garcia upon his release by Barton County.  On April 8, 2010, plaintiff was turned over to immigration officials. Mr. Garcia alleges that the only money signed over at the time he was released by Barton County to federal authorities was $85 cash. Plaintiff's allegations do not suggest that a forfeiture proceeding was instituted or that the cash was otherwise lawfully disposed under Kansas law.[3]

---

[3] See e.g. K.S.A. § 22-2512 (governing the custody, storage and disposition of seized property).  That section provides:

> (1) Property seized under a search warrant or validly seized without a warrant shall be safely kept by the officer seizing the same unless otherwise directed by the magistrate, and shall be so kept as long as necessary for the purpose of being produced as evidence on any trial.

In his 2010 case, Mr. Garcia pled guilty in federal court to reentry after deportation and admitted to violation of his supervised release.  The federal district court sentenced him to forty-six months of incarceration on the unlawful reentry conviction.  It also imposed a consecutive eight-month sentence in his 2007 case for the supervised release violation, giving him a total term of fifty-four months.  Mr. Garcia is currently in federal custody serving these sentences with a projected date of removal to Mexico of March 2014.

On November 21, 2011, Mr. Garcia filed a pro se "Motion for Court Order Compelling Production of Defendant's Property" (Doc. 53) in his 2010 criminal case pursuant to Fed.R.Crim.P. 41(g) seeking an order requiring the United States Attorney to turn over "the

---

> The property seized may not be taken from the officer having it in custody so long as it is or may be required as evidence in any trial. The officer seizing the property shall give a receipt to the person detained or arrested particularly describing each article of property being held and shall file a copy of such receipt with the magistrate before whom the person detained or arrested is taken.
>
> * * *
>
> (3) When property seized is no longer required as evidence, it shall be disposed of as follows:
>
>> (a) Property stolen, embezzled, obtained by false pretenses, or otherwise obtained unlawfully from the rightful owner thereof shall be restored to the owner;
>>
>> (b) money shall be restored to the owner unless it was contained in a slot machine or otherwise used in unlawful gambling or lotteries, in which case it shall be forfeited, and shall be paid to the state treasurer pursuant to K.S.A. 20-2801, and amendments thereto;
>
> * * *
>
>> (g) unless otherwise provided by law, all other property shall be disposed of in such manner as the court in its sound discretion shall direct.

K.S.A. § 22-2512.  Under Kansas law, property may be seized by a law enforcement officer upon process issued by a district court or "without process on probable cause to believe the property is subject to forfeiture under this act."  K.S.A. 60-4107(a)(b).

4

property seized during the executio of his arrest." In this motion, he specified the property he was seeking as $1200 currency. The Government responded (Doc. 56) that Garcia must be seeking the return of the $1200 in cash, which he claimed was seized from him during his arrest by state and local law enforcement officials in Barton County prior to his being turned over to ICE officials. The Government stated that "the only property associated with the defendant" when he was "turned over to ICE was $85," and that ICE turned this amount over to the Rice County Jail where it had arranged for defendant's detention. The Government further stated that when Garcia was subsequently taken into custody by the U.S. Marshal Service, $45 was left in his Rice County account and this amount followed him into federal custody. The Government finally responded that it had "no information whatever about $1200 purportedly possessed by the defendant upon his arrest in Barton County in March 2010," and there was no evidence that the Government had ever possessed or controlled this money. The judge denied Garcia's 41(g) motion for the reasons stated in the Government's response (Doc. 57).

Plaintiff claims that the taking of his $1200 during his arrest in Barton County was an unlawful seizure that was without justification and without due process. He asks the court to order the defendants to return or reimburse his $1200 and pay all costs.[4]

Plaintiff alleges that he has not begun any other lawsuits in state or federal court dealing with the same facts as in this action. He states that he has sought administrative relief from the

---

[4] Plaintiff is more specifically seeking $1200 less the $85 which he acknowledges was signed out with him from Barton County, or $1115.

appropriate officials, and in support alleges that he "directed several letters to Barton County" for an explanation of the seizure or return of his money, but received no response. He does not exhibit copies of any of these letters.

**SCREENING**

Because Mr. Garcia is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B).

A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997). The court accepts all well-pleaded allegations in the complaint as true. Anderson v. Blake, 469 F.3d 910, 913 (10th Cir. 2006). Nevertheless, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 558, 570 (2007). To avoid dismissal, the complaint's "factual allegations must be enough to raise a right to relief above the

6

speculative level," and there must be "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 555, 570 (citation omitted).  The complaint must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." <u>Id.</u> at 555.

The court must always assure itself of its jurisdiction. <u>See Image Software, Inc. v. Reynolds & Reynolds Co.</u>, 459 F.3d 1044, 1048 (10th Cir. 2006)(stating that a federal court has an independent obligation to determine whether subject matter jurisdiction exists and may raise the issue at any stage in the litigation).

**DISCUSSION**

For the purpose of screening the complaint filed in this case, the court accepts as true plaintiff's allegations that he was arrested by Barton County law enforcement officers, that he had $1200 cash in his possession, that this money was taken from him during his arrest, and that the bulk of this money has never been returned.  On the other hand, plaintiff's allegation that he was subjected to an unconstitutional search and seizure is nothing more than a conclusory statement.[5]  Plaintiff describes no circumstances during his arrest or detention that, if proven, would establish an illegal search or seizure. Accordingly, this unsupported allegation is not entitled to a presumption of truth.  In any event, plaintiff seeks no relief based upon his claim of illegal search and seizure

---

[5] Under the search incident to arrest exception, a police officer has authority, incident to an arrest, to search a person and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him.  Furthermore, jail detainees are routinely not permitted to possess large amounts of cash while incarcerated.

7

apart from the return of the seized money.

Mr. Garcia claims that the taking and retention of his cash was without due process. The Due Process Clause of the Fourteenth Amendment guarantees due process when a person may be deprived of life, liberty, or property. U.S. Const. amend. XIV, § 1. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976)(citing Armstrong v. Manzo, 380 U.S. 545, 552 (1965)); Dusenbery v. United States, 534 U.S. 161, 167 (2002)(quoting United States v. James Daniel Good Real Property, 510 U.S. 43, 48 (1993))("individuals whose property interests are at stake are entitled to 'notice and an opportunity to be heard.'"). However, "[t]he Fourteenth Amendment does not protect against all deprivations" of property but only against those "accomplished 'without due process of law.'" Baker v. McCollan, 443 U.S. 137 (1979); Zinermon v. Burch, 494 U.S. 113, 126 (1990)(A constitutional due process violation that is actionable under § 1983 "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process."); see also Hudson v. Palmer, 468 U.S. 517, 533 (1984)(recognizing a due process deprivation does not occur "until and unless" the state provides or refuses to provide a suitable post-deprivation remedy). In most circumstances, pre-deprivation process is expected. See, e.g., Mitchell v. W.T. Grant Co., 416 U.S. 600, 611 (1974). This does not mean that the State can take property in those cases where it is impossible to provide a meaningful pre-deprivation hearing, without providing a meaningful post-deprivation hearing. Parratt v. Taylor, 451 U.S. 527, 541 (1981) *overruled on other grounds by* Daniels v.

Williams, 474 U.S. 327, 330 (1986).

In Parratt, the United States Supreme Court ruled that when a plaintiff alleges deprivation of a property interest occurring as a result of "a random, unauthorized act," the Fourteenth Amendment's due process requirement is satisfied if the state provides an adequate post-deprivation remedy.[6] Id. at 541-43; Hudson, 468 U.S. at 533; Zinermon, 494 U.S. at 128 ("Parratt and Hudson represent a special case . . . in which postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide."); Palmer v. Unified Government of Wyandotte County/Kansas City, Kansas, 72 F.Supp.2d 1237, 1252 (D.Kan. 1999). Though Parratt involved negligent deprivations of property, the Court later held that this reasoning also applied to intentional deprivations of property. Hudson, 468 U.S. at 533. Accordingly, property loss claims are not cognizable under § 1983 in federal court when a state's post-deprivation remedies are adequate to protect a plaintiff's procedural due process rights. Where states provide an adequate remedy, that remedy itself constitutes the due process required by the Fourteenth Amendment. Parratt, 451 U.S. at 543-44; McCormick v. City of Lawrence, Kansas, 253 F.Supp.2d 1172, 1198-99 (D. Kan. 2003)(citing Hudson, 468 U.S. at 530–33), *aff'd*, 99 Fed.Appx. 169 (10th Cir. 2004); see also Smith v. Colo. Dep't of Corr., 23 F.3d 339, 340 (10th Cir. 1994)("Fourteenth Amendment due process guarantees

---

[6] The rationale underlying Parratt is that when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply "impracticable" since the State cannot know when such deprivations will occur. Furthermore, the State can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct.

9

pertaining to property are satisfied when an adequate, state postdeprivation remedy exists for deprivations occasioned by state employees."). It has thus been rationally held that in order "to state a § 1983 claim, (plaintiff) was required to plead the inadequacy or unavailability of a post deprivation remedy." Montana v. Hargett, 84 Fed.Appx. 15, 16 (10th Cir. 2003)(unpublished)[7] (citing Durre v. Dempsey, 869 F.2d 543, 548 (10th Cir. 1989)(affirming dismissal of plaintiff's due process deprivation of property claim, stating that "[i]n order to state a claim under § 1983, a complaint must allege facts sufficient to show deprivation, in this case the lack of an adequate state remedy")).

In this action, Mr. Garcia alleges, with very little elaboration, that his cash was taken by the arresting officer or officers whose names are unknown and had not been returned as of the date he filed this action. It appears from these allegations that he is complaining of the very kind of "random and unauthorized action" contemplated by the Parratt-Hudson line of cases. He does not allege that his loss was caused by an established state procedure.[8] Nor has he pled that no adequate state remedy was available.

It is clear that Kansas provides post-deprivation remedies to

---

[7] Unpublished opinions are not cited herein as binding precedent, but for persuasive value. See Fed.R.App.P. 32.1 and 10th Cir.R. 32.1.

[8] Mr. Garcia does not describe any county custom or policy, allege that it was followed by officers who took possession of his cash upon his arrest or detention, and explain how that process was unconstitutional. Rather, his allegations suggest that defendants failed to follow state or county policy governing property seized upon arrest or proper disposal of seized property once criminal proceedings are concluded. Plaintiff erroneously assumes that even if his money was taken in a random act by the arresting officer or a county officer, Barton County is "fully responsible for its Police Department and its officials." "A municipality may not be held liable under § 1983 solely because it employs a tortfeasor." Board of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997).

persons who believe they have suffered a tortious loss at the hands of state officials. <u>Haynes v. Attorney General of Kan.</u>, 2005 WL 2704956 at *5 (D.Kan. 2005).  For example, Mr. Garcia could have filed a claim for replevin.  <u>See</u> <u>e.g.</u>, K.S.A. § 60-1005.  Section 60-1005 provides a procedure for actions to recover personal property, and specifically authorizes a replevin action for property in the custody of an officer as a result of any legal process.  <u>See</u> K.S.A. § 60-1005(c)("If the property the possession of which is sought is in the custody of an officer under any legal process it shall nevertheless be subject to replevin under this section. . . .").  In addition, he could have filed a claim for conversion.  <u>See</u> <u>e.g.</u>, <u>Herndon v. City of Park City, Kan.</u>, 2007 WL 3171524, *3 (The assertion that "property has either been lost or disposed of, or remains in possession of defendant or its agents" represents the "textbook definition of conversion.").  He also might have filed a claim under the Kansas Tort Claims Act.  <u>See</u> <u>McCormick</u>, 253 F.Supp.2d at 1199 (a claim under the Kansas Tort Claims Act or for conversion are available actions cognizable under state, not federal law.).  These types of state procedures have generally been held sufficient to satisfy the requirements of due process.  <u>Parratt</u>, 451 U.S. at 543-44; <u>see</u> <u>also</u> <u>Harmon v. Williams</u>, 77 Fed.Appx. 440, 441-42 (10th Cir. 2003)(unpublished); <u>Bridgeforth v. Field</u>, 153 F.3d 726, *2 (10th Cir. July 17, 1998)(Table), <u>cert.</u> <u>denied</u>, 525 U.S. 1154 (1999).  Courts in this district have already specifically determined that these Kansas procedures are adequate post-deprivation remedies for the type of harm alleged in plaintiff's complaint.  <u>Herndon</u>, 2007 WL at 3171524 at *3((citing, among other authorities, Kansas decisions that have recognized the

11

availability of sufficient post-deprivation procedures, including <u>Wilkins v. Skiles</u>, 2005 WL 3084902, at *8 (D.Kan. Oct. 20, 2005)(finding that the plaintiff's Fourteenth Amendment procedural due process claim was barred because the claim was based on an alleged failure to follow state mandated procedures and the plaintiff had an adequate remedy under Kansas law based on a replevin action or an action for conversion); Haynes, 2005 WL 2704956, at *5 (finding that the plaintiff's Fourteenth Amendment due process claim was barred because the claims were based on random, unauthorized acts, and plaintiff had an adequate state law remedy under the Kansas Tort Claims Act or a claim for conversion); <u>McCormick</u>, 253 F.Supp.2d at 1198-99 (same). These remedies provided all the process that was due to Mr. Garcia.

Plaintiff's allegations plainly indicate that he has not utilized the state court remedies that are available. They in no way suggest that the available state-court remedies were ineffective. Plaintiff's remedy was to pursue his claims of property loss or deprivation in the state courts.

In sum, the court finds that plaintiff fails to state a plausible federal constitutional claim of denial of due process for the reason that adequate post-deprivation remedies were available to Mr. Garcia in state court. Plaintiff is given time to show cause why this action should not be dismissed for failure to state a cognizable claim under 42 U.S.C. § 1983. If he fails to show cause within the time allotted, this action may be dismissed without further notice.

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiff is given

thirty (30) days to satisfy the filing fee herein by either paying the $350.00 fee in full or submitting a properly supported motion to proceed without prepayment of fees upon court-approved forms.

**IT IS FURTHER ORDERED** that within the same thirty-day period plaintiff is required to show cause why this action should not be dismissed for failure to state a federal constitutional claim.

The clerk is directed to send plaintiff forms for filing a motion to proceed without prepayment of fees together with a copy of this Order.

The clerk is also directed, if appropriate, to list all Mr. Garcia's pending cases under both Garcia-Roman and Garcia to ensure accuracy of records relating to this person.

**IT IS SO ORDERED.**

Dated this 1st day of June, 2012, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge